UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     v.<br><br>JAMES WILLIAMS, III,<br>a/k/a Dilly,<br><br>          Defendant | CRIMINAL NO. 3:18-CR-00153<br><br>(MARIANI, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 48). Defendant, James Williams, III, moves this Court to reconsider its earlier order of detention pursuant to 18 U.S.C. § 3142(f) or to find that his continued detention violates his rights pursuant to the Eighth Amendment. The Government opposes this motion. (Doc. 53).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On May 2, 2018, Williams was charged by criminal complaint with one count of distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. 841. (Doc. 1). On May 3, 2018, Williams appeared before this Court for his initial appearance on that charge, at which time he was detained pending a detention hearing scheduled for May 10, 2018. (Doc. 9). On May 8, 2018, Williams was charged by Indictment with eight counts – one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine; two counts of distribution and possession with intent to distribute cocaine within 1000 feet of a school; one count of possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of cocaine; one count of

possession of a firearm in furtherance of drug trafficking crime; one count of felon in possession of a firearm; one count of possession of a firearm with an obliterated serial number; and one count of possession of a stolen firearm with an obliterated serial number. (Doc. 11). Williams appeared before this Court for his arraignment on May 10, 2018. The Government sought detention; Williams sought release. Following a detention hearing, the Court ordered Williams detained, finding that, even though Williams had rebutted the presumption of detention pursuant to 18 U.S.C. § 3142(e)(3) [1], detention was warranted based on consideration of the factors to be considered under the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the danger to the community should he be released. (Doc. 15). In particular, the Court found that the weight of the evidence proffered against Williams was strong, that he was subject to a lengthy period of incarceration if convicted, he had an extensive criminal history, he lacked stable employment, and he had a record of participation in criminal activity while on supervision, probation, or parole. (Doc. 15).

On June 21, 2018, Williams filed a motion for pretrial release. (Doc. 20). The Court conducted a hearing on that motion on July 16, 2018, after which it denied the motion, finding

---

[1] Under the Bail Reform Act, certain charges, such as those in the instant case, raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). A defendant may rebut the presumption of detention by producing "some credible evidence ... that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The charges against Williams are serious drug trafficking charges which raise the presumption under § 3142(e)(3).

that Williams failed to rebut the presumption of detention, and that consideration of the factors under the Bail Reform Act warranted detention. (Doc. 25; Doc. 26). On October 29, 2019, an executed Plea Agreement was filed. (Doc. 42). A change of plea hearing was scheduled but continued when Defendant's motion to withdraw counsel was granted. The hearing has not been rescheduled yet.

Williams is currently housed at Lackawanna County Prison. On April 6, 2020, Williams, through counsel, filed a motion to review detention pursuant to § 3142(f) due to the changed circumstances of the COVID-19 virus. Williams also submits that his release is warranted to protect his Eighth Amendment rights. (Doc. 48; Doc. 49). Williams purports to have suffered from childhood asthma, and submits that puts him at a higher risk for severe illness if he contracts COVID-19. He also seeks release so he can care for his mother while she recovers from surgery. (Doc. 48).

Counsel for Williams filed a Notice with the Court on April 8, 2020 indicating that the parties were unable to come to an agreement regarding Williams's release from detention, but agreeing that a hearing on the motion is not necessary. (Doc. 50).

## II. DISCUSSION

### A. THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[2] The COVID-19 outbreak caused the President of the

---

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available

United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[3] As of the date of this writing, there are 3,090,445 confirmed cases worldwide and 217,769 deaths; in the United States, there are 1,003,974 confirmed cases and 52,428 deaths.[4] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

    B.    C<span style="font-variant:small-caps">onditions at</span> L<span style="font-variant:small-caps">ackawanna</span> C<span style="font-variant:small-caps">ounty</span> P<span style="font-variant:small-caps">rison</span>

In its brief in opposition, the Government outlines the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 53-1; Doc. 53-2). Specifically, the prison is implementing guidance from the Centers for Disease Control, and the facility is on lockdown. The prison has in place an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all

---

at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 30, 2020).

programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area. In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 53-1; Doc. 53-2; Doc. 53-3).

As of April 2, 2020, one correctional officer at the Lackawanna County Prison tested positive for the virus. The Government submits that, according to the U.S. Marshals Service, the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. That officer is recovered from the virus, and no other cases have been reported at the prison.

**III.   ANALYSIS**

Williams asks this Court to reconsider its previous orders detaining him based upon the "changed circumstances" presented by the COVID-19 pandemic. He also asks this Court

to consider that his continued detention may be a violation of his Eight Amendment rights. For the following reasons, the Court will deny the motion.[5]

### A. RECONSIDERATION OF DETENTION ORDER PURSUANT TO § 3142(F)

Williams asks this Court to reconsider its previous detention decision based upon the "changed circumstances" of the COVID-19 pandemic and so that he can care for his mother. 18 U.S.C. § 3142(f) states, in pertinent part, as follows:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

While both the COVID-19 pandemic and Williams's mother's health issues are new information, this information does not change the Court's finding that there is no condition

---

[5] In addition to responding to Williams's § 3142(f) "changed circumstances" and Eighth Amendment arguments, the Government also addresses a potential argument for release pursuant to § 3142(i). As Williams has not moved for temporary release under that section, and it would be his burden to establish that such release is warranted. *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court cannot and will not make any finding as to release under (i), but does note that, based on the record before it, it does not appear that such temporary release would be warranted. *See United States v. Veras,*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020) (in reviewing a motion for temporary release under § 3142(i) the Court will review (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.).

or combination of conditions which would assure the safety of the community should Williams be released.

The charges against Williams trigger the rebuttable presumption under § 3142. In order to rebut the presumption of detention, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Santiago-Pagan*, 1:08-CR-0424-01, 2009 WL 1106814, at *4 (M.D. Pa. Apr. 23, 2009); quoting *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). If the defendant is able to meet this burden of production, the government bears the ultimate burden of persuasion. *See United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir.1986). Even if a defendant rebuts the presumption of dangerousness or flight, however, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Santiago-Pagan*, 2009 WL 1106814, at *4; quoting *United States v. Farris*, No. 2:08cr145, 2008 WL 1944131, at *8 (W.D.Pa. May 1, 2008) (internal citations omitted).

Rebuttal of the presumption of dangerousness requires a showing that defendant's criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. The record before the Court does not reflect that Williams has a respect for the law, personal reliability, or that his criminality is a thing of the past. *Santiago-Pagan*, 2009 WL 1106814, at *5. At the last review of his detention, the Court determined that Williams had not rebutted the presumption (Doc. 50), and nothing in the current motion changes that finding.

Even if Williams had rebutted the presumption, however, consideration of the factors under the Bail Reform Act still require that Williams be detained pending trial, as "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In

determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

      The COVID-19 pandemic, Williams's childhood asthma, and his mother's health issues change neither the nature and circumstances of the charged offenses nor the weight of the evidence against Williams. This new information has no impact on the Court's determination of either of these factors, which weigh squarely in favor of continued detention. The charges against Williams are extremely serious. The evidence against Williams, as proffered by the Government, is substantial.

      The pandemic and Williams's health do have some bearing, however, on the third factor under the Bail Reform Act, the nature and characteristics of the defendant. Those "characteristics" include the physical and mental health of the defendant, and the existence and potential impact of the COVID-19 virus is a change in that particular characteristic. However, it is but one characteristic contemplated by the Bail Reform Act. The balance of Williams's history and characteristics still weighs heavily in favor of detention. There is nothing before the Court indicating that he is not receiving the care and medical attention he needs at Lackawanna County Prison, that he has a plan for medical care should he be released, or that the medical care he might receive in the community is better than that which

he is receiving while detained, without continuing to be a threat to the safety of others. *See United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant has no plan for medical care should he be released, and that there is no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others). Williams's criminal history is severe and includes two felony drug trafficking convictions.

Williams has a history of engaging in dangerous behavior and being unable to follow rules and orders of the Court. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020). Williams's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on pretrial release. *United States v. Lee*, 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). It may also place the United States Marshals Service officers at risk if re-apprehending him is necessary. *See United States v. Lunnie*, 4:19-CR-00180 KGB, 2020 WL 1644495, at *5 (E.D. Ark. Apr. 2, 2020).

Finally, the Court considers the fourth detention factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release.*" *Lee*, 2020 WL 1541049, at *4–5; 18 U.S.C. § 3142(g)(4) (emphases added). Williams's release, which the Court has previously determined to pose a danger to the community, now poses a greater danger. That danger now includes not only this Court's previous conclusion that he will continue to engage in the same types of unlawful and potentially dangerous

conduct that led to the charges in this case, but also the heightened safety risks that Williams's release poses to the probation officers tasked with monitoring his behavior if he were to be released on supervision. *Lee*, 2020 WL 1541049, at *4-5; *see also United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (motion for release denied, in part, where defendant did not convince the court that her release would not pose a danger to the community).

Based on the foregoing, the Court finds that there is nothing about the new circumstances of the COVID-19 pandemic, or Williams's mother's health, that has a material impact on any of the factors previously considered by this Court in determining that he should be detained. Therefore, Williams's motion to reopen the Court's detention decision pursuant to 18 U.S.C. § 3142(f) is denied.

### B.  VIOLATION OF EIGHTH AMENDMENT RIGHTS

Williams also argues that his release may be warranted as his continued confinement while exposed to COVID-19 may violate the Eighth Amendment's prohibition against cruel and unusual punishment. In making this argument, Williams relies on the Supreme Court's decision in *Helling v McKinney*, 509 U.S. 25 (1993), in which the Court found that the plaintiff, who was assigned to a cell with a smoker, stated a cause of action under the Eighth Amendment, as his exposure to tobacco smoke posed an unreasonable risk of serious damage to his future health. In response, the Government submits that prison officials have neither exhibited "deliberate indifference" nor exposed Williams to anything that poses an "unreasonable risk of serious damage to his future health." (Doc. 53, at 31, n. 20).

The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional

guarantees traditionally associated with criminal prosecutions." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005); quoting *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction." *Hubbard*, 399 F.3d at 164; quoting *Graham v. Connor*, 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Instead, a federal pretrial detainee's constitutional rights related to conditions of confinement flow from the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "[U]nder the Due Process Clauses, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535–36. The proper standard for examining such claims is the standard set forth in *Bell* – whether the conditions of confinement amount to punishment prior to an adjudication of guilt. *Davis v. City of Philadelphia*, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018) (internal citations omitted). Pretrial detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment. *United States v. Salerno*, 481 U.S. 739, 742, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Pretrial detention in order to secure a defendant's appearance or protect the public is not punitive; it does not constitute "impermissible punishment before trial" that would violate due process. *See Salerno*, 481 U.S. at 742, 748. As long as it is reasonably related to a legitimate governmental objective, pretrial detention without more does not amount to punishment. However, detention that is not reasonably related to a legitimate goal, or is arbitrary or purposeless, may constitute constitutionally prohibited punishment. *See Bell*, 441 U.S. at 539.

Whether a pretrial detainee has been punished generally turns on whether the conditions have a purpose other than punishment, and whether the totality of the conditions

are "excessive" such that they resulted in "genuine privations of hardship over an extended period of time." *Hall-Wadley*, 386 F.Supp.3d 512,516 (E.D.Pa. 2019); quoting *Bell*, 441 U.S. at 538–39; *Hubbard*, 399 F.3d at 159–60. "Absent a showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538-39.

In this case, Williams's due process argument fails. He makes only a generic argument that his conditions of confinement run afoul of his Constitutional rights. He makes neither a compelling case of a constitutionally cognizable deprivation nor demonstrates that Lackawanna County Prison is being deliberately indifferent to the needs and circumstances of the people who are in its custody. Williams has not established that the conditions at the facility are "arbitrary or purposeless." *See Bell,* 441 U.S. at 539. Williams has not shown that the facility and authorities are unable or unwilling to address COVID-19. *See Boatwright*, 2020 WL 1639855, at *6–7 (rejecting general Fifth Amendment arguments that applied equally to any detainee, and noting that the prison was taking reasonable recommended precautions); *Lee*, 2020 WL 1541049, at *5 (rejecting Fifth Amendment arguments in light of aggressive precautions being taken by the prison to prevent the spread of COVID-19); *United States v. Villegas*, No. 2:19-cr-568-AB, 2020 WL 1649520, at *2–3 (C.D. Cal. Apr. 3, 2020)(finding no evidence of arbitrary and punitive intent where the Bureau of Prisons was responding to prevent infectious outbreak, protect inmate health, and preserve internal order); *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366, at *2 (D. Md. Apr. 3, 2020) (noting that while detention during a pandemic was not optimal, the measures taken by the prison facility were reasonable under the circumstances, so the defendant's allegations did not rise to the

level of a constitutional violation); *see also United States v. Boone*, 2:16-CR-00020-TLN, 2020 WL 1865202, at *3 (E.D. Cal. Apr. 14, 2020); *Peterson v. Diaz*, No. 2:19-cv-01480-WBS-GGH, 2020 WL 1640008, *2 (E.D. Cal. Apr. 2, 2020). Indeed, the evidence before the Court shows that the prison is complying with guidelines set forth by the Center for Disease Control and taking steps and precautions to mitigate and control the virus at the facility. *See United States v. Robert Leake*, 19-CR-194 (KBJ), 2020 WL 1905150, at *5 (D.D.C. Apr. 17, 2020). District Courts throughout the country have rejected Constitutional challenges to pretrial detention based on general concerns over the COVID-19 pandemic. *United States v. Hernandez*, 3:19-CR-346-K, 2020 WL 1876102, at *5 (N.D. Tex. Apr. 14, 2020) (collecting cases).

Based on the information before the Court, the Court finds Williams's conditions of pretrial detention are reasonably related to legitimate government interests. For these reasons, the Court finds that Williams's constitutional argument fails.

IV. **CONCLUSION**

While the Court is sympathetic to the concerns regarding the spread of COVID-19, the findings made pursuant to the Court's previous detention orders remain unchanged. The Court has considered the evidence presented by the Government and by Williams, including his medical information and the response of the Lackawanna County Prison to the pandemic. However, even considering this information, the balance of the factors under the Bail Reform Act – the nature and circumstances of the offenses charged, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community upon release – mandate that Williams remain detained, as there is no condition or combination of conditions that can reasonably assure the safety of the community should he be released. Further, Williams's argument for release based on a potential violation of his Constitutional rights fails.

For these reasons, Williams's motion for pretrial release (Doc. 48) is **DENIED**. An appropriate Order will follow.

**Dated: May 1, 2020**                                    *s/ Karoline Mehalchick*
                                                                                                  **KAROLINE MEHALCHICK**
                                                                                                  **United States Magistrate Judge**