THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　　　:
　　　　　　　　　　　　　　　　: CRIMINAL ACTION NO. 3:18-CR-153
　　　　　v.　　　　　　　　　　: (JUDGE MARIANI)
　　　　　　　　　　　　　　　　:
JAMES WILLIAMS, III,　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　Defendant　　　　　　　:

## MEMORANDUM OPINION
### I. INTRODUCTION

The Motion of Defendant to Dismiss for Violation of the Speedy Trial Act and the

United States Constitution (Doc. 59) is pending before Court.  With the Motion, Defendant

argues that more than seventy non-excludable days have elapsed since May 10, 2018, in

violation of the Speedy Trial Act, 18 U.S.C. § 3161.  (Doc. 59 ¶ 14.)  He also argues that the

period of delay runs afoul of his right to a speedy trial afforded by the Sixth Amendment of

the United States Constitution.  (*Id.* ¶ 15.)  Based on the asserted statutory and

constitutional violations, Defendant requests that the Court dismiss the action against him

with prejudice.  (*Id.* at 5.)  The Government concedes that more than seventy non-

excludable days have passed and a violation of the Speedy Trial Act has occurred.  (Doc.

62 at 6.)  However, the Government's position is that the Indictment should be dismissed

without prejudice so that Defendant can be re-indicted on the charges pending against him.

(*Id.*)  For the reasons discussed below, the Court agrees with the parties that a Speedy Trial

Act violation occurred and concludes that Defendant's Sixth Amendment right to a speedy

trial has not been violated and the charges against Defendant are properly dismissed without prejudice.

## II. BACKGROUND

On May 2, 2018, a Criminal Complaint was filed against James Williams, III ("Defendant"), charging him with Possession with Intent to Distribute a Schedule II Controlled Substance in violation of 21 U.S.C. § 841.  (Doc. 1.)  Defendant was arrested on May 3, 2018, and Magistrate Judge Karoline Mehalchick held his initial appearance, scheduling a Detention Hearing for May 10, 2018, ordering Defendant detained pending the hearing, and appointing Carl J. Poveromo, Esq., as counsel to represent Defendant.  (Docs. 8, 9.)

On May 8, 2018, a federal grand jury returned an eight count indictment, charging Defendant with one count of conspiracy to distribute and possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C. § 846; two counts of distribution and possession with intent to distribute cocaine within 1,000 feet of a school in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C.§ 860; one count of possession with intent to distribute 500 grams and more of a mixture containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c); one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k)

and 18 U.S.C. § 924(a)(1)(B); and one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(g).  (Doc. 11.)

   On May 10, 2018, Defendant entered a plea of "Not Guilty" to the Indictment.  (Doc. 14.)  On June 8, 2018, Defendant filed a motion for an extension of time to file pretrial motions which was granted until August 11, 2018.  (Docs. 18, 19.)

   On June 21, 2018, defense counsel filed a motion and supporting brief requesting release pending trial.  (Docs. 20, 21.)  The Court held a hearing on July 16, 2018, and subsequently denied the motion.  (Docs. 24-26.)  The Court found that Defendant failed to rebut the presumption under 18 U.S.C. § 3142(e)(3)(A) in favor of detention and no conditions or combination of conditions would reasonably assure the safety of the community.  (Doc. 25 at 6.)

   On August 1, 2018, Defendant filed his second motion for an extension of time to file pretrial motions which the Court granted and extended the time until October 1, 2018.  (Docs. 27, 28.)

   On August 29, 2018, Mr. Poveromo filed a motion to withdraw as counsel, and on September 12, 2018, the Court appointed Robert Levant, Esq., to represent Defedant.  (Docs. 20, 31, 32.)

   On September 20, 2018, the Defendant filed his third motion for an extension of time to file pretrial motions.  (Doc. 33.)  On September 24, 2018, the Defendant's motion was granted thereby extending the deadline to file pretrial motions to November 26, 2018.  (Doc.

34.)  On November 26, 2018, Defendant filed his fourth motion for an extension of time to

file pretrial motions.  (Doc. 35.)  On November 27, 2018, this Court entered an order

granting the Defendant's motion for an extension of time to file pretrial motions stating that

the pretrial motions were due no later than December 26, 2018, and "[a]bsent exigent

circumstances, no further motions for an extension of time to file pretrial motions [would] be

granted."  (Doc. 36.)  On December 26, 2018, no pretrial motions were filed by either party.

On February 20, 2019, Defendant's counsel filed a motion requesting an order be

entered allowing for a pre-plea pre-sentence report.  (Doc. 38.)  The Court granted the

motion on February 21, 2019.  (Doc. 39.)  On April 29, 2019, the Federal Probation Office

filed the requested pre-plea pre-sentence report regarding Defendant.  (Doc. 40.)

On July 9, 2019, Defendant signed a plea agreement with the government and

agreed to enter a guilty plea to counts one and six of the Indictment.  (Doc. 42.)  On October

29, 2019, the Government filed the fully executed plea agreement.[1]  (Doc. 42)

The Court scheduled a change of plea hearing for January 8, 2020.  (Doc. 43.)  At

the hearing, Defendant did not enter a guilty plea and requested a new attorney.  (Hr'g Tr.

12: 5-13, 18-19; 16:4-5 (Doc. 61 at 12, 16).)  The Court made clear that the plea agreement

would remain in place until Defendant had an opportunity to consult with new counsel and

---

[1] The Government states that "[a]lthough government counsel received the signed plea agreement on August 28, 2019, a change in the law regarding count six of the Indictment, 18 U.S.C. § 922(g), occurred requiring additional discussions between counsel."  (Doc. 62 at 4 & n.1 (citing *United States v. Rehaif*, 139 S. Ct. 2191 (2019)).)

4

Defendant definitively rejected the plea agreement.  (Hr'g Tr. 17:3-5 (Doc. 61 at 17).)

Defendant confirmed that he understood.  (Hr'g Tr. 17:9-10 (Doc. 61 at 17).)

The following day, the Court appointed Williams' third and current defense counsel,

Christopher Opiel, Esq.  (Doc. 47.)  In the brief supporting the pending motion, Mr. Opiel

states that

> [i]mmediately after being appointed to the case, Undersigned Counsel picked up the case file from the Defendant's prior CJA counsel and began to review the case and the discovery with the Defendant. Undersigned Counsel began to frequently correspond with the Assistant United States Attorney("AUSA") assigned to the case in order to get 'caught up to speed' on the case. Undersigned Counsel believed he was up to speed with the case and began discussing possible resolutions to the case with the AUSA assigned to the case on February 5, 2020.

> On April 6, 2020, the Defendant filed a motion for release from custody pursuant to the COVID-19 Pandemic. (Doc. 48). The Defendant's motion for release from custody was denied on May 1, 2020.  (Doc. 55).

> As Undersigned Counsel continued to discuss the case with the Defendant it seemed apparent that Undersigned Counsel was missing a crucial portion of discovery in Undersigned Counsel's case file.[2]  Undersigned Counsel sent written correspondence to the AUSA assigned to the case on August 12, 2020 regarding whether or not there were additional documents in discovery that Undersigned Counsel did not have in his possession.

> On October 2, 2020, Undersigned Counsel again followed up with the AUSA regarding the discovery and Undersigned Counsel clarified that he was in possession of three (3) discovery disks that contained documents bate-stamped 0001-0111.   On October 5, 2020, the Government informed Undersigned Counsel that discovery should include documents bate-stamped

---

[2] Mr. Opiel notes that "Undersigned Counsel does not assert that the missing discovery was intentionally not provided to Undersigned Counsel by anyone involved. Undersigned Counsel believes that the missing discovery was an accidental oversight; however, this did ultimately prejudice the Defendant." (Doc. 60 at 5 n.1.)

0001-0130; therefore, Undersigned Counsel was missing approximately nineteen (19) pages of discovery. The Government did make a full copy of the entire discovery available to Undersigned Counsel immediately.

The additional discovery included evidence of search warrant affidavits that included information about multiple confidential witnesses and consensual phone interceptions to which Undersigned Counsel was unaware existed up until October 2020. This additional discovery also required Undersigned Counsel to request additional documentation from the Government, which was promptly provided to Undersigned Counsel.

(Doc. 60 at 4-5.)

On December 23, 2020, Defendant's counsel filed the pending motion and supporting brief. (Docs. 59, 60.) The Government filed its opposition brief on January 6, 2021. (Doc. 62.) With the filing of Defendant's reply brief (Doc. 63) on January 20, 2021, the Motion of Defendant to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 59) is fully briefed and ripe for disposition.

### III. ANALYSIS

In his initial brief, Defendant raises three main arguments: 1) because more than seventy non-excludable days have elapsed pursuant to the application of 18 U.S.C. § 3161(c)(1), the Speedy Trial Act has been violated; 2) the charges against him must be dismissed with prejudice pursuant to 18 U.S.C. § 3162(a)(2) and the ultimate prejudice suffered; and 3) the charges against him must be dismissed with prejudice due to a violation of the Sixth Amendment of the United States Constitution. (Doc. 60 at 6, 8, 15.) Although the Government concedes that a Speedy Trial Act violation has occurred (Doc. 62 at 6), the Court will briefly discuss the contours of the violation before turning to the two issues in

dispute, i.e., whether dismissal pursuant to the Speedy Trial Act should be with or without

prejudice, and whether a Sixth Amendment violation has occurred.

## A. Speedy Trial Act Violation

As noted above, the parties agree that a Speedy Trial Act violation has occurred.

The Speedy Trial Act provides as follows:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, which ever date last occurs.

18 U.S.C. § 3161(c)(1).  Section 3161(h) addresses what periods of time are excludable in

calculating the time within which a trial must commence.  It specifically provides the

following in pertinent part:

> **(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
>     . . . .
>
> **(D)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(D).  Section 3162 provides that the defendant has the burden of

proof supporting a motion claiming a Speedy Trial Act violation.  18 U.S.C. § 3162(a)(2).

The Government concedes that seventy non-excludable days elapsed on February

5, 2019.  (Doc. 62 at 6.)  Because Defendant's counsel did not file any motions until

February 20, 2019, fifteen more days of non-excludable time elapsed.  (*Id.*)  Thus, the

parties agree that eighty-five days of non-excludable time elapsed between May 10, 2018,

and February 20, 2019.  (Doc. 60 at 8; Doc. 62 at 6.)  The parties also agree that, under the

Speedy Trial Act, the charges against Defendant must be dismissed based on the lapse of

more than seventy non-excludable days.  (*Id.*)  However, the parties disagree on whether

dismissal should be with or without prejudice.  (*Id.*)

## B. Speedy Trial *Act Dismissal With* or Without Prejudice

"The Speedy Trial Act does not specify whether dismissal should be with or without

prejudice, nor does it contain a default presumption one way or the other."  *United States v.*

*Robinson*, 389 F.3d 582, 586 (6th Cir. 2004).  To determine whether the dismissal should

be with or without prejudice, the court must consider, among other factors,  "the

seriousness of the offense; the facts and circumstances of the case which led to the

dismissal; and the impact of a reprosecution on the administration of this chapter and on the

administration of justice." 18 U.S.C. § 3162(a)(2).  "Where, as [in section 3162(a)(2)],

Congress has declared that a decision will be governed by consideration of particular

factors, a district court must carefully consider those factors as applied to the particular case

and, whatever its decision, clearly articulate their effect in order to permit meaningful

appellate review." *United States v. Taylor*, 487 U.S. 326, 336 (1988); *United States v. Stevenson*, 832 F.3d 412, 419 (3d Cir. 2016) (quoting *Taylor*, 487 U.S. at 336)).

In *United States v. Taylor*, the Supreme Court identified the presence or absence of prejudice to the defendant as a relevant factor. 487 U.S. at 334. Therefore, the Court will analyze the three statutory factors as well as prejudice to Defendant. Because the Third Circuit analyzes prejudice as a component of the third statutory factor, *Stevenson*, 832 F.3d at 422, the Court will do the same.[3]

---

[3] *Stevenson* footnotes its formulation of the third factor inquiry with an explanation of consideration of prejudice to the defendant:

[t]he Supreme Court has suggested that prejudice to the defendant is among the "other[ ]" non-express factors that the Speedy Trial Act directs district courts to consider. *See Taylor*, 487 U.S. at 333–34, 108 S.Ct. 2413 (gleaning from the legislative history "the relevance of prejudice to the defendant"); *id.* at 344, 108 S.Ct. 2413 (Scalia, J., concurring in part) (arguing that the facts "(1) that prejudice to the defendant is one of the factors that the phrase 'among others' in § 3162(a)(2) refers to, and (2) that that factor is not necessarily determinative [are] so utterly clear from the text of the legislation that there is no justification for resort to the legislative history"). Courts have widely recognized, however, that this technically distinct factor often fits quite naturally into assessments of the third express factor. *See, e.g.*, *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010) ("That the court should consider whether the defendant has been prejudiced is implicit in th[e] broadly stated formula [of § 3162(a)(2) ]."); *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987) ("The third factor makes clear the flexible, balancing approach required under § 3162(a)(1). In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant."); *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004).

*Stevenson*, 832 F.3d at 422 n.8.

In *United States v. Hastings*, 847 F.2d 920 (1st Cir. 1988), the First Circuit Court of

Appeals provided context for the considerations identified in 18 U.S.C. § 3162(a)(2),

explaining that the

> construct was intended as a compromise, gleaned from many sources and addressed to diverse constituencies. *See generally* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (1980), at 197–218. We are satisfied, based on the historical record, that the three-pronged test was crafted to encourage judges to weigh both private and public interests when determining whether or not to foreclose reprosecution. *See* [*United States v. Caparella,* 716 F.2d 976, 978–81 (2d Cir. 1983)] (analyzing legislative history). The omnibus clause of section 3162(a)(2), of course, allows a court to widen the lens of inquiry, but only slightly. Any extraneous matters to be considered must be rationally related to the balancing objectives of the tripartite test. Thus, a district court may factor into the Act's calculus, for example, items such as the length of the delay and the prejudice to the defendant stemming from the violation (or conversely, the absence of prejudice). *See* [*United States v. Brown,* 770 F.2d 241, 245 (1st Cir. 1985)]. *Accord United States v. Bittle,* 699 F.2d 1201, 1208 (D.C. Cir. 1983). The approach, ultimately, is discretionary, permitting the trial judge to examine a variety of serviceable fabrics and measurements, and custom-tailor an order of dismissal to suit the exigencies and equities of a particular case.

*Hastings*, 847 F.2d at 924.

### 1. Seriousness of the Charges

Defendant acknowledges that the charges against him "have regularly been

classified as serious charges." (Doc. 60 at 9-10.) However, he adds that it is relevant that

he "has not been charged with any acts of violence which would certainly be considered a

more serious charge." (*Id.* at 10.) In support of finding that this factor weighs in favor of

dismissal without prejudice, the Government notes that his firearms charges include

possessing firearms in furtherance of drug trafficking and the indictment alleged that

Defendant distributed cocaine near a school.  (Doc. 62 at 7.)  The Government also states

that consideration of the length of the potential sentence is relevant, and, in this case,

Defendant faces a mandatory minimum of ten years of incarceration based on the amount

of drugs he is allegedly responsible for and the possession of a firearm in furtherance of

drug trafficking.  (*Id.* (citing *United States v. Howard*, 218 F.3d 556, 561 (6thCir. 2000);

*United States v. Wright*, 6 F.3d 811, 813-16 (D.C. Cir. 1993)).)  The Court concludes that

this factor weighs in favor dismissal without prejudice.

The Third Circuit stated in *Stevenson* that the first § 3162(a)(2) factor, the

seriousness of the offense,

"centers primarily on society's interest in bringing the particular accused to
trial." *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988). The logic
behind this factor is intuitive: "[t]he graver the crimes, the greater the insult to
societal interests if the charges are dropped, once and for all, without a
meaningful determination of guilt or innocence." *Id.*

*Stevenson*, 832 F.3d at 419–20.  *Stevenson* noted that the District Court rightly held that the

defendant's heroin and firearms offenses are serious offenses for purposes of the Speedy

Trial Act and, on this basis, rightly held that the first factor weighed in favor of dismissal

without prejudice.  *Id.* at 420.

Here Defendant is charged with both firearms and drug offenses, including

distribution and intent to distribute cocaine within 1,000 feet of a school and the use of a

firearm in furtherance of drug trafficking.  *See supra* p. 2.  The fact that he was not charged

with an act of violence which he says "would certainly be considered a more serious charge"

(Doc. 60 at 10) does not detract from the fact that he was a repeat felon who is charged with serious offenses and faces a mandatory minimum of ten years.  Therefore, the Court concludes that the first factor weighs in favor of dismissal without prejudice.

## 2.  Facts and Circumstances that Led to Dismissal

Defendant asserts that the facts and circumstances which led to dismissal are attributable to the Government and not to Defendant.  (Doc. 60 at 11.)  The Government contends the facts and circumstances do not show bad faith or that the Government actively caused delays.  (Doc. 62 at 8.)  The Court concludes that this factor weighs in favor dismissal without prejudice.

*Stevenson* explained that the second factor—the facts and circumstances that led to dismissal—requires courts to consider the reasons for the delay:

> did it stem from "intentional dilatory conduct" or a "pattern of neglect on the part of the Government," or rather, from a relatively benign hitch in the prosecutorial process? *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005) ("In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay."); *see also United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998) ("Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant.").

*Stevenson*, 832 F.3d at 420.  "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government."  *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

The Supreme Court has instructed that "something more than an isolated unwitting violation," must be found to support a dismissal with prejudice, as exemplified by a finding that "the Government acted in bad faith with respect to the [defendant] [or] the court['s] discovery of a pattern of neglect by the local United States Attorney." *Taylor*, 487 U.S. at 339.

Defendant specifically states that he does not allege that the Government acted in bad faith in causing the delay.  (Doc. 60 at 11.)  However, he maintains that "an administrative oversight on the part of the government caused the speedy trial violation" and this provides no excuse.  (*Id.* (citing *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992)).)  The Government specifically points to negotiations between the Government and defense counsel as the source of the non-excludable days following December 26, 2018, negotiations which it says led to Defendant's request for a pre-plea pre-sentence report. (Doc. 62 at 8.)   The Government also cites former defense counsel's reference to the plea negotiations at the plea hearing, including his statement that he worked hard through negotiation to get to what he believed to be the favorable outcome found in the plea agreement.  (*Id.* at 9 (citing Hr'g Tr. 13:15-14:7 (Doc. 61 at 13-14)).)

Defendant does not point to any pattern of delay, does not dispute that plea negotiations were in progress when the violation occurred, and does not dispute that the Government concurred in all motions for enlargement of time.  The Court finds it significant that four motions for enlargement of time to file pretrial motions were filed by Defendant's

counsel in the period preceding the non-excludable time in which the seventy days lapsed. *See supra* pp. 3-4.  In sum, Defendant has not presented any basis to conclude that the facts and circumstances which lead to the dismissal of this case show more than "an isolated unwitting violation" on the part of the Government. *Taylor*, 487 U.S. at 339.  Thus, the Court finds that the second factor weighs in favor of dismissal without prejudice.

### 3. The Impact of a Represecution on the Administration of the Speedy Trial Act and on the Administration of Justice

Defendant asserts that he was severely prejudiced by the delay in that the "passage of time and multiple administrative oversights by the Government has caused the Defendant missed opportunities to identify and evaluate potential witnesses and evidence in a timely manner relevant to the alleged offense." (Doc. 60 at 13.)  The Government contends that no adverse consequences would follow from re-prosecution. (Doc. 62 at 11.)  The Court concludes that this factor weighs in favor of dismissal without prejudice.

"'The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act.'"  *Stevenson*, 832 F.3d at 422 (quoting *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000) (internal citation and quotation marks omitted)).

Regarding prejudice to the defendant, the Supreme Court explained in *United States v. Taylor* that

[t]he length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:

> [I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

487 U.S. at 340-41 (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White,

J., concurring).  The Court added that "although the absence of prejudice is not dispositive,

[it can be] another consideration in favor of permitting reprosecution."  487 U.S. at 341.

Here, although Defendant alleges severe prejudice, he points to speculative rather than actual prejudice.  (Doc. 60 at 13-14.)  Defendant does not identify actual prejudice as a result of the delay of fifteen days upon which his motion is based.  *See supra* pp. 7-8 (citing Doc. 60 at 8; Doc. 62 at 6).  Defendant states in a footnote that he "believes that additional non-excludable time can be attributed to his case beyond February 20, 2019," but finds it "unnecessary to pursue an argument over this since it is clear that more than seventy (70) non-excludable days have elapsed."  (Doc. 60 at 8 n.3.)  Thus, he bases the pending motion on the fifteen-day delay which occurred from the time the seventy days elapsed on February 5, 2019, to the time the clock stopped on February 20, 2019, with the filing of Defendant's motion requesting an order allowing a pre-plea pre-sentence report.  As there is no dispute

that the parties were engaged in plea negotiations during that time, actual prejudice from

the relevant delay is not apparent or argued.[4]

Further, if the Court were to consider Defendant's assertion of prejudice based on a

more extensive period of delay, the outcome would be the same.  Defendant argues that he

> was severely prejudiced by the delay in bringing his case to trial. The passage
> of time and multiple administrative oversights by the Government has caused
> the Defendant missed opportunities to identify and evaluate potential witnesses
> and evidence in a timely manner relevant to the alleged offense. Undersigned
> Counsel was unaware of the existence of multiple confidential witnesses and
> consensually recorded phone conversations until approximately ten (10)
> months into his representation of the Defendant. Undersigned Counsel and the
> Defendant cannot speculate as to what possible defense evidence and/or
> witnesses could have developed if this information was available sooner.

(Doc. 60 at 13.)  With these assertions, Defendant does not provide any information

regarding prejudice such as problems with contacting identified witnesses or how he

suffered prejudice related to the recorded phone conversations he learned about in October

2020.  Taking his statement that he missed "opportunities to identify and evaluate potential

witnesses and evidence in a timely manner" (*id.*), to mean that he missed opportunities prior

to mid-October 2020 when he received the requested discovery, he does not say that he

encountered problems regarding these matters thereafter or that any avenue of defense

was hindered by the Government's oversight.

---

[4] In his reply brief, Defendant states that "[t]he Government is not relieved of its burden of complying with the time constraints in the Speedy Trial Act due to continued negotiations with Defense Counsel." (Doc. 63 at 2.)  The Court agrees with this statement.  However, whether the Government is relieved of its burden of complying with the Speedy Trial Act is not the issue.  In considering the prejudice factor of the relevant inquiry, the fact that plea negotiations were taking place (negotiations that resulted in Defendant signing a plea agreement) is pertinent to whether Defendant was prejudiced by the delay.

As with the shorter period, the record shows that plea negotiations were ongoing after Defendant filed the motion for a pre-plea pre-sentence report. *See supra* p. 4. Importantly, Defendant signed a plea agreement on July 9, 2019, thereafter additional discussion took place due to a change in the law, a fully executed plea agreement was filed on October 29, 2019, and a change of plea hearing took place on January 8, 2020. *Id.* Because Defendant expressed a desire for a new attorney and reluctance to change his plea at the time, saying he felt "rushed and . . . didn't really have enough time to really go over it" with his attorney, the plea proceeding was halted with the specific directive that the plea agreement was to remain in place until Defendant and new counsel decided what they wanted to do. (Hr'g Tr. 12:5-13, 16:4-10, 17:2-10 (Doc. 61 at 12, 16, 17).) The Court appointed Defendant's current counsel the next day. (Doc. 47.) Defendant's counsel indicates that he immediately picked up the file and reviewed it, began to frequently correspond with the AUSA, and began discussing possible resolutions with the AUSA assigned to the case on February 5, 2020. (Doc. 60 at 4.)

As set out above, in mid-August 2020, Defendant's counsel thought that some discovery documents may have been missing from his case file and, by mid-October, the Government had provided him with missing discovery and additional follow-up documentation which Defendant's counsel requested. *See supra* pp. 5-6. Defendant characterizes this problem as an "accidental oversight" on the Government's part. (Doc. 60 at 5 n.2.) Defendant gives no accounting of the time between the receipt of requested

discovery and his filing of the pending motion on December 23, 2020, with the plea agreement still in place.

Although some time in post-plea hearing period can fairly be attributed to the Government's "accidental oversight," the foregoing timeline shows that a far greater portion of the delay is due to Defendant's change in counsel and his discussions with the AUSA about possible resolutions of the case.  On this record, Defendant's statement that the missing discovery ultimately prejudiced him cannot be deemed sufficient to show that this factor weighs in favor of dismissal with prejudice.

Regarding the prosecutorial misconduct prong of this factor, i.e., "whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act," *Stevenson*, 832 F.3d at 422, Defendant asserts that this element is established in this case "merely by the passage of time and the Governments [sic] inaction in following the time frame provided by the Speedy Trial Act." (Doc. 60 at 14.)  The Court disagrees that a mere violation of the Speedy Trial Act shows prosecutorial misconduct such that the third factor weights in favor of dismissal with prejudice.  If the Court were to adopt Defendant's argument that an inadvertent lapse of the seventy-day period were sufficient to show prosecutorial misconduct, the Court would be ignoring the Supreme Court's instruction that "something more than an isolated unwitting violation, must be found to support a dismissal with prejudice." *Taylor*, 487 U.S. at 339.  Because

Defendant does not allege bad faith and presents no evidence of a "pattern of neglect by the local United States Attorney," *id.*, he has not satisfied his burden of showing that the administration of the Speedy Trial Act and the administration of justice element weighs in favor of dismissal with prejudice.

With this determination, the Court has found that all relevant factors weigh in favor of dismissal without prejudice based on the violation of the Speedy Trial Act.  Notwithstanding this conclusion, before determining the proper disposition of the pending motion, the Court will analyze Defendant's Sixth Amendment claim since, if that claim is granted, Defendant would be entitled to dismissal of the charges against him with prejudice.  *See Strunk v. U.S.*, 412 U.S. 434, 439–40 (1973).

**B. Sixth Amendment**

Defendant also argues that the Court should dismiss his case due to his right to a speedy trial under the Sixth Amendment of the United States Constitution because the relevant factors weigh in his favor.  (Doc. 60 at 15.)  The Government responds that no Sixth Amendment violation has occurred.  (Doc. 62 at 13-18.)  The Court concludes that Defendant has not satisfied his burden of establishing a Sixth Amendment violation.

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy and public trial."  U.S. CONST. amend. VI.  "Congress enacted the Speedy Trial Act to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced."  *United States*

*v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988) (citing H.R. Rep. No. 1508, 93d

Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402).

Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which

does not require that a trial commence within a specified time." *Lattany*, 982 F.2d at 870

n.5.  However, because the Speedy Trial Act "was enacted largely to make defendants'

constitutional speedy trial rights meaningful, many courts have noted that 'it will be an

unusual case in which the time limits of the Speedy Trial Act have been met but the sixth

amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d

323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir.

1982)).

> As explained by the Supreme Court:

> Our speedy trial standards recognize that pretrial delay is often both inevitable
> and wholly justifiable. The government may need time to collect witnesses
> against the accused, oppose his pretrial motions, or, if he goes into hiding, track
> him down. We attach great weight to such considerations when balancing them
> against the costs of going forward with a trial whose probative accuracy the
> passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court

should employ a four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972),

to assess the merits of the claim.  *United States v. Dent,* 149 F.3d 180, 184 (3d Cir. 1998).

An analysis of these factors avoids an "inflexible approach[]" which would result from

applying a fixed-time period in determining whether there has been a constitutional violation

and, rather, applies a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 529-530.

In *Barker*, the Supreme Court identified four factors in determining whether a defendant has been deprived of his right to a speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'" *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533); *see also*, *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) ("All factors must be considered and weighed as no one factor is dispositive nor 'talismanic.'") (citing *Barker*, 407 U.S. at 533).

## 1. *Length of Delay*

As an initial matter, the length of delay "is measured from the date of formal accusation, *i.e.,* from the earliest date of arrest or indictment until the commencement of trial." *Hakeem*, 990 F.2d at 760 (citing *United States v. MacDonald,* 456 U.S. 1, 6-7 (1982)). Importantly, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Otherwise stated,

> The first of these [factors] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court

> must then consider, as one factor among several, the extent to which the delay
> stretches beyond the bare minimum needed to trigger judicial examination of
> the claim.

*Doggett,* 505 U.S. at 651-52 (internal citation omitted).  In determining whether a defendant

has met this threshold burden of demonstrating delay which is "presumptively prejudicial",

the Supreme Court has noted that "[d]epending on the nature of the charges, the lower

courts have generally found postaccusation delay 'presumptively prejudicial' at least as it

approaches one year" but has emphasized that "as the term is used in this threshold

context, 'presumptive prejudice' does not necessarily indicate a statistical probability of

prejudice; it simply marks the point at which courts deem the delay unreasonable enough to

trigger the *Barker* enquiry."  *Id*. at 652 n.1.  Further,

> because of the imprecision of the right to speedy trial, the length of delay that
> will provoke such an inquiry is necessarily dependent upon the
> peculiar circumstances of the case.  To take but one example, the delay that
> can be tolerated for an ordinary street crime is considerably less than for a
> serious, complex conspiracy charge.

*Barker*, 407 U.S. at 530-531; *see also, Battis*, 589 F.3d at 678 ("We have previously held that

a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors.

However, we have also noted that longer delays can be tolerated, for example, when the

crime is very serious or complex.").

Here, Defendant asserts in his December 23, 2020, supporting brief that over two

years and seven months had passed since his indictment.  (Doc. 60 at 16.)  He further

asserts that this is longer than the two and a half years that the Court found "presumptively

prejudicial" in *United States v. Green*, 471 F. Supp. 3d 577, 596 (M.D. Pa. 2020), and, therefore, triggers review of the *Barker* factors.  (Doc. 60 at 16.)  The Government contends that the length of delay from Defendant's initial appearance is 156 days when excludable time is deducted which is not presumptively prejudicial and does not trigger review of the remaining *Barker* factors.  (Doc. 62 at 13.)

Defendant is correct that this initial inquiry looks at the total time which has elapsed since the date of formal accusation.  *Doggett,* 505 U.S. at 651-52; *Hakeem*, 990 F.2d at 760.  However, the end point is identified as "the commencement of trial."  *Id.*  Where no trial is contemplated because the defendant has signed a plea agreement and a fully executed plea agreement has been filed, as is the case here, a rigid application of the identified bookmarks may not be consistent with the flexible approach identified by the Supreme Court.  *See*, *e.g.*, *Barker*, 407 U.S. at 529-531.  The Court need not resolve this issue now because more than a year elapsed from Defendant's May 3, 2018, arrest to the filing of the fully executed plea agreement on October 29, 2019.  Thus, Defendant's postaccusation delay exceeds the postaccusation delay which courts presume prejudicial-- i.e., as the delay "approaches one year"--and is sufficient to trigger the *Barker* enquiry. *Doggett,* 505 U.S. at 652 n.1; *see also., Hakeem*, 990 F.2d at 760 (over fourteen-month delay warranted full inquiry into *Barker* factors); *United States v. Mensah-Yawson*, 489 F. App'x 606, 611 (3d Cir. 2012) (fifteen-month delay sufficient to warrant inquiry into other *Barker* factors).

With this determination, the Court will turn to the second aspect of consideration of the length of delay, i.e., whether "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim" weighs in favor of finding a Sixth Amendment violation. *Doggett,* 505 U.S. at 652. As noted previously, Defendant asserts that over two years and seven months had passed at the time he filed the pending motion on December 23, 2020. (Doc. 60 at 16.) Though he argues that this period of time is presumptively prejudicial for purposes of triggering the *Barker* analysis, he does not present any argument as to how "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim," *Doggett,* 505 U.S. at 652, weighs in favor of his Sixth Amendment claim. Thus, Defendant has not met his burden of showing that this initial factor weighs in his favor.

Upon independent analysis of the factor, the Court finds that it is neutral. A delay of over a year and a half beyond the minimum needed to trigger the *Barker* analysis cannot be considered to weigh against the Government in that more than one year of that time post-dates the October 29, 2019, filing of the fully executed plea agreement (Doc. 42) which remains in place. In other words, since October 29, 2019, at the latest, there has not been a reason to schedule a trial.[5]

---

[5] Arguably, because Defendant signed the plea agreement on July 10, 2019 (Doc. 42 at 35), that is the date on which the need to schedule trial was obviated.

### 2. Reason for the Delay

With respect to the second *Barker* factor, reason for the delay, the Government

"bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.

In turn, "delays attributable to the dilatory actions of the defendant cut against a

finding of a Sixth Amendment violation." *Hakeem*, 990 F.2d at 766. *See also*, *Battis*, 589

F.3d at 680 ("By contrast, 'delay caused by the defense weighs against the defendant' . . .")

(quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)). This "rule accords with the reality that

defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to

the accused's advantage' because 'witnesses may become unavailable or their memories

may fade" over time.'" *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521); *see also*,

*United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986) ("'Having sought the aid of the

judicial process and realizing the deliberateness that a court employs in reaching a decision,

the defendants are not now able to criticize the very process which they so frequently called

upon.'") (quoting *United States v. Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969)).

The Government contends that none of the non-excludable delay was intentionally caused by the Government.  (Doc. 62 at 15; *see also* id at 13 n.2.)  The Government specifically asserts that "[a]t most, it was negligence on the part of the government for failing to request a trial date immediately after the expiration of the filing time for pretrial motions. However, the government and defense counsel were working towards a potential plea agreement."  (*Id.* at 15.)

Defendant again states that he does not allege that the Government acted with specific intent or malice in causing the delay.  (Doc. 60 at 16.)  However, Defendant contends that this factor weighs against the Government because "a 'neutral reason such as negligence or overcrowded courts' weighs against the Government since ultimately it is the Governments [sic] duty to bring the Defendant to trial in compliance with the Sixth Amendment."  (Doc. 60 at 16 (quoting *United States v. Green*, 471 F. Supp. 3d at 596 (quoting *United States v. Battis*, 589 F.3d at 679)).)

The Court agrees that negligence on the part of the government in bringing a case to trial weighs against the government, though it does so "less heavily" than in the case of a deliberate effort to delay the trial.  *Battis*, 589 F.3d at 679-680.  However, this is only part of the story: delay caused by the defense weighs against the defendant.  *Vermont v. Brillon,* 556 U.S. at 90; *United States v. Battis*, 589 F.3d at 680.

The docket in this case shows that the majority of delay preceding the filing of the pending motion is attributable to Defendant.  As summarized by the Government, 201 days

are excludable due to Defendant's initial motions to enlarge the pretrial motion deadline and 69 days are excludable due to Defendant's filing a motion to obtain a pre-plea pre-sentence report.  (Doc. 62 at 13 n.2.)  Thus, Defendant is responsible for 270 days, from his arrest to the filing of the fully executed plea agreement on October 29, 2019, the date on which there was no longer a need to schedule trial.

The Government filed no motion which caused delay.  No evidence or argument suggests that the delay was "[a] deliberate effort by the Government to delay the trial in order to hamper the defense."  *Barker,* 407 U.S. at 531.  The fact that the parties were actively engaged in plea negotiations for much of the delay period is a factor weighing against finding that the delay violated the Sixth Amendment.  *See, e.g.*, *Middlebrook v. Carroll*, 470 F. Supp. 2d 411, 422 (D. Del. 2007); *United States v. Phalom*, No. 08-CR-0065, 2013 WL 3821757, at *2 (W.D.N.Y. July 23, 2013).

Considering the reason for delay during the post-plea agreement period, the time from the filing of the plea agreement on October 29, 2020, to the January 8, 2020, change of plea hearing is neutral.  However, Defendant is responsible for delay resulting from his request for new counsel at the plea hearing and counsel's need to get up to speed in the case with the exception of a period of time during which Defendant's counsel recognized the omission of discovery and rectified the problem.[6]  *See supra* pp. 4-6.  Though Defendant

---

[6]  As noted previously, Defendant attributes the problem to an "accidental oversight" on the part of the government.  *See supra* pp. 17-18.

identifies August 12, 2020, as the date he contacted the AUSA about the problem and October 5, 2020, as the date he received information about missing discovery from the Government (Doc. 60 at 5), the need for assessment of the newly received discovery indicates that a period of ninety-days of the post-hearing period should not be attributed to Defendant. Thus, from January 8, 2020, to December 23, 2020, the date the pending motion was filed, a period of 350 days elapsed and the Court finds that 260 of those days are attributable to Defendant.

Thus, 530 days (270 days pre-plea agreement and 260 days after the plea hearing) of the 965 days that elapsed from Defendant's arrest on May 3, 2018, to the filing of the pending motion on December 23, 2020, are attributable to Defendant. Given these circumstances, the Court concludes that the reason for delay in this case does not support a Sixth Amendment violation.

### 3. Assertion of Speedy Trial Rights

The Court now turns to the third *Barker* factor – the defendant's assertion of his right to a speedy trial. "Whether and how a defendant asserts his right [to a speedy trial] is closely related" to the other *Barker* factors. *Barker*, 407 U.S. at 531. Thus, the strength of a defendant's efforts to assert his right "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. "[T]he point at which the defendant asserts his right is important because it may reflect the seriousness

28

of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288

(5th Cir. 1976) (citing Barker, 407 U.S. at 531).

Here, Defendant asserted his right to a speedy trial with the pending motion which

was filed on December 23, 2020, 966 days after his arrest.  (3:18-CR-21 Doc. 65.)

Defendant's supporting brief presents the following rationale:

> The Defendant and Undersigned Counsel have diligently and efficiently
> evaluated discovery and corresponded with the Government. The Defendants
> [sic] assertion of his right to a speedy trial is being asserted shortly after the
> Defendant and Undersigned Counsel realized that Undersigned Counsel
> unknowingly did not possess the entire discovery on the case for the initial ten
> (10) months of Undersigned Counsel's representation of the Defendant.
> Therefore, the Defendant is asserting his right to a speedy trial has been
> violated promptly after it has become apparent to the Defendant that his speedy
> trial rights were violated, and his defense is clearly prejudiced due to the delay.

(Doc. 60 at 18.)

The assertion about the realization of missing discovery may be relevant to partially

explain the period of time during which Defendant's current counsel did not indicate

Defendant's position regarding the pending plea agreement.[7]  However, the realization that

some discovery was missing does not explain why no motion was made earlier given that

the Speedy Trial Act's seventy-day period ran in February 2019 and May 2019 marked the

one-year "presumptively prejudicial" period after which a Sixth Amendment claim arguably

---

[7] As previously stated in the text, the Court specifically instructed Defendant that "the plea
agreement remains in place until your new counsel—you consult with your new counsel, and if you decide
to reject the plea agreement, then . . . you're essentially in a position where there is no plea agreement and
the process will continue."  (Hr'g Tr. 17:3-7 (Doc. 61 at 17).)

became viable.  From either point forward, missing discovery or not, Defendant could have asserted his speedy trial rights in that the facts necessary to determine the passage of the relevant period of time were readily apparent and available.  As stated in *Palmer*, "[t]o the extent that promptness in asserting the right is important, then [a defendant's] silence . . . works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."  *Palmer*, 537 F.2d at 1288; *see also United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance).  Because Defendant did not file the pending motion unitl long past the time he could have done so, this factor does not weigh in favor of finding a Sixth Amendment speedy trial violation.

### 4.  Prejudice to Defendant

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant.  With respect to this factor, "the burden of showing prejudice lies with the individual claiming the violation."  *Hakeem*, 990 F.2d at 760.

As directed in *Barker*, the prejudice factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."  407 U.S. at 532. *Barker* identified and explained the three interests which the Supreme Court has identified:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be

impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

   We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker*, 407 U.S. at 532–33.

   In response to an argument that the defendant had "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence," the Supreme Court emphasized in *Doggett* that its precedent indicates that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655 (citing *Moore v. Arizona,* 414 U.S. 25, 26 (1973)]; *Barker,* 407 U.S. at 533). The Court explained that

   *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S., at 532, 92 S. Ct., at 2193. And though time can tilt the case against either side, see *id.,* at 521, 92 S. Ct., at 2187; *Loud Hawk, supra,* 474 U.S., at 315, 106 S.

31

> Ct., at 656, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, see *Loud Hawk, supra,* at 315, 106 S. Ct., at 656, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett*, 505 U.S. at 655–56.

In *Battis*, the Third Circuit drew from *Barker* and *Doggett* that a defendant can establish prejudice in two ways. 589 F.3d at 682. First, he can make a specific showing that that he was subject to "'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Id.* (quoting *Barker*, 407 U.S. at 532). Second, a defendant can claim prejudice without providing "'affirmative proof of particularized prejudice'" based on "'excessive delay [which] presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *Id.* (quoting *Doggett* , 505 U.S. at 655-56). In *United States v. Villalobos*, 560 F. App'x 122 (3d Cir. 2014) (not precedential), a panel of the Third Circuit identified the three types of prejudice recognized by the Supreme Court (as stated in *Hakeem*, 990 F.2d at 760), noting that the third type, impairment of a defense, "can either be shown in a particularized fashion, or presumed due to an extreme pre-trial delay." 560 F. App'x at 127 (citing *Doggett,* 505 U.S. at 655 (finding presumptive prejudice in pre-trial delay of more than eight years)).

Here, Defendant claims that he has been subjected to severely oppressive pretrial incarceration, he has suffered anxiety and concern, and "it is highly possible that the defense has been impaired due to the delay." (Doc. 60 at 19-20.)  The Court will address each claimed basis of prejudice in turn.

**(a) Oppressive Pretrial Incarceration**

The Defendant states that he "has been subjected to severely oppressive pretrial incarceration for over two (2) years and seven (7) months." (Doc. 60 at 19.)  In support of this assertion, Defendant states that he

> has filed three (3) separate motions seeking pretrial release throughout his pretrial incarceration in which none were granted. (Docs. 20, 41, 48).  These motions include a motion for bail filed on June 19, 2019 in which the docket does not indicate whether a hearing was ever scheduled or held on said motion. (Doc. 41)  Furthermore, the Defendant has been detained throughout the COVID-19 Pandemic subjecting the Defendant to unusually oppressive pretrial incarceration conditions.

(Doc. 60 at 19.)

As Defendant recognizes, the determination of whether incarceration was "oppressive" takes into account the "conditions of confinement."  (Doc. 60 at 19 (citing *Hakeem*, 990 F.2d at 761).)  As stated in *Hakeem*, "proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment' is necessary in order to establish prejudice due to oppressive pre-trial incarceration."  990 F.2d at 761.

The Court concludes Defendant has not made the requisite showing.  First, the denial of pretrial release is not an oppressive condition of confinement.  Rather, it is a

regular occurrence, especially for those who are incarcerated pretrial in cases where, as here, a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3)(A) in favor of detention and the court finds that the defendant failed to rebut the presumption. (*See, e.g.* Doc. 25 at 6.)

Second, during the COVID-19 pandemic, conditions of confinement related to COVID-19's attendant risks and prison conditions aimed at addressing the virus are the norm—during this time they cannot be considered "unusually oppressive" as a matter of course. Further, Defendant's Motion for Pretrial Release Due to COVID-19 (Doc. 48) was carefully considered by Magistrate Judge Karoline Mehalchick wherein she noted that "District Courts throughout the country have rejected Constitutional challenges to pretrial detention based on general concerns over the COVID-19 pandemic." (Doc. 54 at 13 (citing *United States v. Hernandez*, 3:19-CR-346-K, 2020 WL 1876102, at *5 (N.D. Tex. Apr. 14, 2020) (collecting cases)). Thus, this Court rejects Defendant's claim that his pretrial detention is unusually oppressive based on the existence of COVID-19.

## (b) Anxiety and Concern

Defendant states that, based on the circumstances described above his anxiety and concern are apparent

> since he has been denied pretrial release multiple times, he is completely unsure why a hearing was never scheduled on his June 19, 2019 motion for bail, and he later learned that Undersigned Counsel was not in possession of his entire discovery until after ten (10) months of Undersigned Counsel's representation.

(Doc. 60 at 19-20.)

Prejudice resulting from anxiety and concern cannot be based solely on a general claim of anxiety. *Hakeem*, 990 F.2d at 762. As explained by the Third Circuit,

> [v]ague allegations of anxiety are insufficient to state a cognizable claim. In *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), we held that a defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *Id.* at 116. In order to reach that level, the petitioner must produce evidence of psychic injury. *See id.* at 115-16.

990 F.2d at 762.

Contrary to Defendant's assertion otherwise, the Court does not find that his anxiety and concern are apparent based on the grounds identified. He presents no more than vague allegations of anxiety and has produced no evidence of psychic injury as necessary to make the showing required under this prong of prejudice. *See Hakeem*, 990 F.2d at 762.

**(c) Impairment of the Defense**

Defendant contends that

> [i]n the instant case the circumstances dictate that it is highly possible that the defense has been impaired due to the delay. As previously argued in this brief, it is impossible for the Defendant to exactly know what evidence, witnesses, and/or testimony has been lost by the passage of time in this case. The Defendant has lost critical time close to the date of the alleged offense to locate and obtain helpful evidence, witnesses, and/or testimony.

(Doc. 60 at 20.)

To establish that his defense was specifically prejudiced by the delay, a defendant cannot rely on general allegations. *Hakeem*, 990 F.3d at 763. Speculative and conclusory assertions cannot satisfy a defendant's burden of showing specific prejudice due to

impairment of his defense: where there has been the recognition of "the possibility of impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case[,] . . . [t]hat possibility of prejudice is not sufficient to support [the defendants'] position that their speedy trial rights were violated." *Loud Hawk*, 474 U.S. at 315 (internal citation and quotation omitted).

Here, the assertions quoted above indicate that Defendant raises a mere possibility of impairment relying on general allegations. Thus, the Court will look at the alternative presumption of prejudice discussed at length in *Doggett*. 505 U.S. at 655-66. To succeed on this factor, Defendant must show that the pretrial delay in his case was of sufficient duration to be considered presumptively prejudicial as that term is meant in the current context. *See, e.g., Battis*, 589 F.3d at 682-83. Importantly, the presumption of prejudice as to the fourth *Barker* factor differs from the initial presumption necessary to trigger consideration of the *Barker* factors. For example, in *Hakeem*, fourteen and a half months was sufficient to trigger initial inquiry into the other *Barker* factors. 990 F.2d at 760, but not long enough to establish a presumption of prejudice under the prejudice factor, *id.* at 764.

*Battis* explained that "[i]n evaluating whether the period of delay was long enough to trigger this 'presumption of prejudice,' the *Doggett* Court considered both the total length of delay (over eight years) and the portion of that delay attributable to the Government (six years)." 589 F.3d at 682-82 (quoting *Doggett*, 505 U.S. at 657-58). *Doggett* held that the delay was long enough to presume that the defendant's trial would be compromised and

he would be prejudiced by the delay. *Id.* After stating that the Circuit Court had had few occasions to consider what period of time was sufficient to find presumptive prejudice, *Battis* noted that it had previously found a fourteen-month period between arrest and trial was insufficient to find presumptive prejudice. *Id.* at 683 (citing *Hakeem*, 990 F.2d at 764). The Circuit Court then held that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government." *Battis*, 589 F.3d at 683. In *Villalobos*, the Third Circuit panel concluded that a delay of sixteen and a half months was insufficient to presume prejudice. 560 F. App'x at 127. In *United States v. Shaw*, 891 F.3d 441, 455 (3d Cir. 2018), the Third Circuit assumed *arguendo* that twenty-seven months could be sufficient to find presumptive prejudice.

Importantly, where a defendant relies on a presumption of prejudice to establish the fourth *Barker* factor and identifies a delay of sufficient duration to be considered presumptively prejudicial, "the presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired.'" *Battis*, 589 F.3d at 682 (quoting *Doggett*, 505 U.S. 658 & n.1).

Turning now to Defendant's arguments regarding the impairment of his defense, Defendant's briefing of the issue speaks only in generalities. (*See* Doc. 60 at 20.) Considering his statement to be an assertion of the presumptive prejudice explained in

*Doggett*, Defendant does not attempt to conduct the inquiry necessary to rely on the presumption of prejudice discussed at length by the Supreme Court.  505 U.S. at 655-66. As set out above, to establish presumptive prejudice he must show that the pretrial delay in his case was of sufficient duration to be considered presumptively prejudicial.  *See*, *e.g.*, *Battis*, 589 F.3d at 682-83.  Defendant does not attempt to separate the length of the total delay and the portion of the delay attributable to the Government, *see Doggett,* 505 U.S. at 657-58; *Battis,* 589 F.3d at 682-82, or otherwise conduct an analysis of presumptive prejudice.

While the overall delay here is less than those held to be presumptively prejudicial in *Doggett* (eight years), 505 U.S. at 655-56, and *Battis* (forty-five months)*,* 589 F.3d at 683, it is longer than those found insufficient in *Hakeem* (fourteen and a half months), 990 F.2d at 764, and *Villalobos* (seventeen and a half months), 560 F. App'x at 127.  The delay here is more than the twenty-seven months assumed *arguendo* to be sufficient to find presumptive prejudice in *Shaw*, 891 F.3d at 455.  As the time at issue here exceeds that assumed *arguendo* to be sufficient in *Shaw*, the Court will proceed with the relevant analysis assuming *arguendo* that the delay in this case is presumptively prejudicial.  Thus, the next question is whether the presumption is mitigated by a showing that Defendant acquiesced in the delay or by the Government's affirmative proof that Defendant's ability to defend himself is unimpaired.  *Battis,* 589 F.3d at 682.

The analysis set out in considering the reason for the delay and Defendant's assertion of his speedy trial rights shows that Defendant acquiesced in the delay. Considered from the time of his arrest or indictment to the filing of the pending motion, the majority of the delay is attributable to Defendant. Defendant filed numerous motions for extensions of time to file pretrial motions. (Docs. 18, 27, 33, 35.) In the midst of plea negotiations, he filed a motion for a pre-plea pre-sentence report. (Doc. 38.) Defendant entered into a plea agreement. (Doc. 42.) Defendant chose not to change his plea at the hearing scheduled for that purpose but rather requested new counsel be appointed and more time to consider the plea agreement. (Doc. 61.) New counsel engaged in discussions regarding possible resolutions of the case with the AUSA. (Doc. 60 at 4.) Defendant did not file the motion under consideration here until long past the time when such a motion could have been appropriately filed. Defendant never indicated that he intended to reject the plea agreement.

On this record, the Court concludes that, assuming *arguendo* that the delay here gives rise to presumptive prejudice under *Doggett*, the presumption is mitigated by Defendant's acquiescence in the delay. Therefore, this factor does not weigh in Defendant's favor.

## 5. Balancing of Factors

As the foregoing analysis establishes, on balance, no factor weighs in Defendant's favor and three factors weigh against him. Defendant's role in causing the delay, the fact

39

that he did not promptly assert his speedy trial rights, and his failure to establish prejudice foreclose a determination that he has demonstrated that his Sixth Amendment speedy trial rights were violated.  Thus, Defendant's pending motion will be denied as to the Sixth Amendment speedy trial claim.

## IV. CONCLUSION

For the reasons set out above, the Court will grant the Motion of Defendant to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 59) in part and deny it in part.  The Court will grant the motion insofar as the Court concludes that the Speedy Trial Act was violated and the May 8, 2018, Indictment must be dismissed.  The Motion is denied in that the dismissal will be without prejudice and Defendant's Sixth Amendment claim will be denied.  A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge